IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

ROBERT WILHELM,

    Plaintiff,

v.

TENGASCO, INC.,
MATTHEW K. BEHRENT,
PETER E. SALAS, and
RICHARD M. THON,

    Defendants.

## COMPLAINT AND JURY DEMAND

Plaintiff Robert Wilhelm ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action against Tengasco, Inc. ("Tengasco" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which the Company will merge with Riley Exploration – Permian, LLC ("Riley") through Tengasco's wholly owned subsidiary Antman Sub, LLC ("Merger Sub") (the "Proposed Transaction").

2. On October 21, 2020, Tengasco and Riley issued a joint press release announcing

that they had entered into an Agreement and Plan of Merger, dated October 21, 2020 (the "Merger Agreement") to merge Riley with Tengasco.  Under the terms of the Merger Agreement, each common unit of Riley will be converted into the right to receive (i) 97.796467 shares of Tengasco common stock, and (ii) any dividends or other distributions to which the holder of Riley units becomes entitled to upon the surrender of such Riley units (the "Merger Consideration").  Upon closing of the merger, the current Riley members will own approximately 95% of the combined company and the current Tengasco shareholders will own 5%.

3. On February 2, 2021, Tengasco filed a Form 424B3 proxy statement/prospectus (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that Tengasco stockholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning, among other things: (i) projections for Tengasco, Riley and the pro forma company; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Roth Capital Partners, LLC ("Roth"); (iii) the background of the Proposed Transaction; and (iv) potential conflicts of interest faced by Company insiders.  Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In short, unless remedied, Tengasco's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting decision on the Proposed Transaction.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections

14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists. Tengasco is headquartered in this District. Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Tengasco common stock.

9. Defendant Tengasco is a Delaware corporation with its principal executive offices located at 8000 E. Maplewood Ave., Suite 130, Greenwood Village, Colorado 80111. Tengasco is an independent oil and gas company that explores for, develops, and produces domestic oil and natural gas reserves. The Company's common stock is traded on the NYSE American under the ticker symbol "TGC."

10. Defendant Matthew K. Behrent ("Behrent") has been a director of the Company since March 2007.

11. Defendant Peter E. Salas ("Salas") has been Chairman of the Board since October

2004 and a director of the Company since October 2002.

12. Defendant Richard M. Thon ("Thon") has been a director of the Company since November 2013.

13. Defendants identified in paragraphs 10 to 12 are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

14. Riley is a Delaware limited liability company with its principal executive offices located at 29 E. Reno Avenue, Suite 500, Oklahoma City, Oklahoma 73104. Riley is an independent oil and natural gas company focused on steadily growing its reserves, production and cash flow through the acquisition, exploration, development and production of oil, natural gas, and natural gas liquids ("NGLs") in the Permian Basin.

15. Merger Sub is a wholly-owned subsidiary of Tengasco.

## SUBSTANTIVE ALLEGATIONS

**Company Background**

16. Founded in 1916, Tengasco, together with its subsidiaries, explores for and produces oil and natural gas in the United States. It primarily holds interests in the oil and gas properties located in Kansas.

17. As of December 31, 2019, the Company had 174 producing oil wells, 13 shut-in wells, and 37 active disposal wells (the "Kansas Properties"). The Company has onsite production management and field personnel working out of its Hays, Kansas office. The leases for the Kansas Properties typically provide for a landowner royalty of 12.5%. Some wells are subject to an overriding royalty interest from approximately 0.5% to 15%. The Company maintains a 100% working interest in most of its wells in Kansas.

18. During 2019, the Company participated in drilling two operated wells, one of which

was completed as a producing well, and one non-operated well, which was completed as a producing well. All of the Company's current reserve value, production, oil and gas revenue, and future development objectives result from the Company's ongoing interest in Kansas.

**The Proposed Transaction**

19. On October 21, 2020, Tengasco and Riley issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

> GREENWOOD VILLAGE, Colo. and OKLAHOMA CITY, Oct. 21, 2020 -- Tengasco Inc. (NYSE American: TGC) ("Tengasco") and Riley Exploration – Permian, LLC ("Riley") announced today that they have entered into a definitive merger agreement in an all-stock transaction. Under the terms of the merger agreement, Tengasco will issue approximately 203 million shares of Tengasco common stock to Riley members at the closing of the transaction. Following the closing of the transaction, the current members of Riley will own 95% of Tengasco and the current Tengasco stockholders will own the remaining 5%. In addition, Riley will become a wholly owned subsidiary of Tengasco.
>
> Riley is a private equity backed company focused on developing conventional oil and natural gas properties in the Northwest Shelf of the Permian Basin. Riley was formed with the goal of building a premier Permian Basin pure-play acquisition, exploration, and development company, focusing on oil-rich, geologically driven sweet spots within legacy oilfields that are conducive to newer drilling and completion techniques. Riley's acreage is primarily located on large contiguous blocks in Yoakum County, Texas and Lea, Roosevelt and Chaves Counties in New Mexico; and the offset legacy assets are located in the Permian Basin San Andres fields, which include the Wasson and Brahaney Fields.
>
> Riley's assets have a shallower decline profile than most unconventional reservoirs, which provides Riley with optionality in terms of capital deployment, development schedule, and management of organic growth. As a result, Riley has a strong balance sheet with a low debt to trailing twelve months Adjusted EBITDAX ratio of 1.4:1, has been able to grow production quarter over quarter, and has a record of paying cash dividends to common unitholders for the past 6 quarters totaling $25 million to date.
>
> Key facts related to Riley's assets and operations include:
>
> - Organic Growth - Long-lived oil-weighted production growth.
>
> - Focus on Returns - Free cash flow and history of dividend payments.

- Lean Balance Sheet - Low debt profile of less than 1.4 x Debt / TTM Adjusted EBITDAX.

- Riley's estimated total proved, probable and possible reserves at September 30, 2019 based on a third-party reservoir engineer report were approximately 54,803, 60,580 and 8,926 MBoe, respectively.

- Nine months ended June 30, 2020 average daily production of 7,073 Net Boe/d (81% oil, 10% Natural Gas and 9% NGLs).

- Management team has a total of over 100 years of collective oil and gas experience, including significant experience in horizontal drilling in the Northwest Shelf of the Permian Basin.

- 44,880 net acres as of June 30, 2020.

At the consummation of the merger, the following is expected to occur:

- Tengasco will change its name to Riley Exploration Permian, Inc.

- Tengasco's common stock will continue to trade on the NYSE American, but under a new symbol, expected to be "REPX."

- Current management of Riley will become the management of Tengasco with Bobby Riley serving as CEO and Kevin Riley as President. Michael Rugen, the interim CEO and the CFO of Tengasco will continue as CFO of Tengasco.

- The corporate office will be relocated to Riley's current office in Oklahoma City, OK.

- We anticipate reverse stock split in a range from 8-to-1 to 12-to-1 will be completed following closing.

- The Board of Directors of Tengasco will consist of:
  - Bobby Riley – Chairman of the Board and Chief Executive Officer
  - Bryan Lawrence – Non-Employee Director
  - Philip Riley – Non-Employee Director
  - Michael Rugen - Director
  - Unnamed Independent Director

Mr. Rugen stated, "We started a process at the beginning of the year to explore strategic alternatives that we hoped could maximize the value of Tengasco for our stockholders. We sought a candidate that would provide a solid asset base, proven management, a healthy balance sheet and growth that could be accelerated based upon market conditions. Riley not only meets these objectives but exceeds them in that they have a history of paying a cash dividend to common unitholders that is expected to continue, resulting in our stockholders participating in that dividend going forward. We are confident in the future of Riley and look forward to closing this merger as quickly as possible."

Bobby Riley further stated, "Riley is positioned to be one of a new breed of E&P companies that offers a mix of assets that provides for strong capital efficiency and optionality for our stakeholders. We believe we will not only maintain our conservative balance sheet, but will improve it over the next year, while maintaining or possibly even increasing our cash dividend over the same period. With our strong hedge position, we are confident heading into the future, and anticipate continued growth, that can be accelerated based upon prevailing market conditions. We believe that providing our stockholders with stockholder friendly policies, along with conservative fiscal management and growth options constitutes the new breed of energy company that the market has been waiting for."

***

The transaction is expected to close during the first quarter of 2021, and it is subject to customary closing conditions and regulatory approvals, including the approval of Tengasco stockholders and Riley members.

**The Proxy Statement Contains Material Misstatements or Omissions**

20.  Defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Tengasco's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

21.  Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) projections for Tengasco, Riley and the pro forma company; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the

Company's financial advisor, Roth; (iii) the background of the Proposed Transaction; and (iv) potential conflicts of interest faced by Company insiders.

***Material Omissions Concerning Financial Projections for Tengasco, Riley and the Pro Forma Company***

22. The Proxy Statement completely omits the financial projections for Tengasco, Riley and the pro forma combined company, relied upon by the Board in determining to approve the Merger Agreement and by Roth for its analyses.

23. For example, the Proxy Statement sets forth:

> The [Tengasco] board of directors also considered a number of uncertainties and risks in its deliberations concerning the merger and the other transactions contemplated by the merger agreement, including . . . [t]he fact that the analyses and projections on which the TGC board of directors made its determinations are uncertain[.]

Proxy Statement at 88.

24. In addition, in connection with Roth's *Net Asset Value Analysis*, the Proxy Statement states:

> Roth using present value of the pre-tax future cash flows that REP could be expected to generate from its existing base of estimated proved reserves, as provided by the management of REP on NYMEX Strip as of June 30, 2020 and by Netherland, Sewell & Associates, Inc. ("NSAI") on SEC pricing as of September 30, 2019.

*Id.* at 94.

25. The Proxy Statement, however, fails to disclose any projections for Tengasco, Riley or the pro forma combined company.

26. The omission of this information renders the statements in the "Opinion of Roth Capital Partners, LLC to the TGC Board of Directors" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Roth's Financial Analyses***

8

27. The Proxy Statement describes Roth's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of Roth's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Tengasco's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Roth's fairness opinion in determining whether to vote in favor of the Proposed Transaction.

28. With respect to Roth's *Comparable Company Analyses*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the selected companies analyzed by Roth.

29. With respect to Roth's *Comparable Transaction Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the selected transactions analyzed by Roth.

30. With respect to Roth's *Net Asset Value Analysis* of Riley, the Proxy Statement fails to disclose: (i) Riley's pre-tax cash flows used in the analysis, and the underlying line items; (ii) the cash flows generated by estimated proved reserves; (iii) the undeveloped acreage value; (iv) net working capital; (v) net current asset retirement obligations, (vi) total debt outstanding; and (vii) quantification of the inputs and assumptions underlying the discount rates of 9%, 10% and 15%.

31. When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

32. The omission of this information renders the statements in the "Opinion of Roth Capital Partners, LLC to the TGC Board of Directors" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning the Background of the Proposed Transaction*

33. The Proxy Statement fails to disclose material information concerning the background of the Proposed Transaction.

34. For example, the Proxy Statement fails to disclose the specific terms of the nondisclosure agreements the Company entered into with potential bidders. Specifically, the Proxy Statement fails to disclose whether any of the nondisclosure agreements entered into with potential bidders during the sale process included standstill provisions or "don't-ask, don't-waive" ("DADW") standstill provisions that are still in effect and presently precluding any potential counterparty from submitting a topping bid for Tengasco.

35. The failure to disclose the existence of DADW provisions creates the false impression that a potential bidder who entered into a confidentiality agreement could make a superior proposal for Tengasco. If the potential acquirer's confidentiality agreement contains a DADW provision, then that potential bidder can only make a superior proposal by (i) breaching the confidentiality agreement—since in order to make the superior proposal, it would have to ask for a waiver, either directly or indirectly; or by (ii) being released from the agreement, which if action has been done, is omitted from the Proxy Statement.

36. Any reasonable Tengasco stockholder would deem the fact that a likely topping bidder may be precluded from making a topping bid for the Company to significantly alter the total mix of information.

10

37. Additionally, the Proxy Statement fails to disclose (i) the financial terms of any bids or indications of interest received by the Company from parties interested in a possible business combination following Roth's outreach to 97 parties; and (ii) the details of Riley's term sheets, including its (a) March 6, 2020 initial draft term sheet, (b) revised June 10, 2020 term sheet, and (c) final June 23, 2020 non-binding indicative term sheet.

38. The omission of this material information renders the statements in the "Background of the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Company Insiders' Potential Conflicts of Interest***

39. The Proxy Statement also fails to disclose material information concerning Company insiders' potential conflicts of interest.

40. The Proxy Statement fails to clarify whether any of Tengasco's officers or directors have secured future employment or board membership following closing of the Proposed Transaction and if so, the details of any employment and retention-related discussions and negotiations that occurred between Riley and Tengasco executive officers and directors, including who participated in all such communications, when they occurred and their content. The Proxy Statement further fails to disclose whether any of Riley's proposals or indications of interest mentioned management retention or equity participation in the combined company.

41. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Tengasco stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

42. The omission of this material information renders the statements in the "Background of the Merger" and "Interests of the TGC Directors and Executive Officers in the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

43. The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Tengasco will be unable to make a sufficiently informed decision whether to vote in favor of the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## COUNT I

**Against All Defendants for Violations of Section 14(a) of the
Exchange Act and SEC Rule 14a-9 Promulgated Thereunder**

44. Plaintiff repeats and realleges each and every allegation contained above, as though fully set forth herein.

45. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

46. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the financial projections for Tengasco, Riley and the pro forma company, the data and inputs underlying the financial valuation

12

analyses that support the fairness opinion provided by the Company's financial advisor, Roth, the background of the Proposed Transaction and potential conflicts of interest faced by Company insiders. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

47. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

48. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

49. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act**

50. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

51. The Individual Defendants acted as controlling persons of Tengasco within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Tengasco and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

52. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

54. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the directors.

55. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Tengasco's stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against defendants as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Tengasco stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

D. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: February 4, 2021                    Respectfully submitted,

                                           /s/ *Richard A. Acocelli*
                                           Richard A. Acocelli
                                           **WEISSLAW LLP**
                                           1500 Broadway, 16th Floor
                                           New York, NY 10036
                                           Telephone: (212) 682-3025
                                           Facsimile: (212) 682-3010
                                           Email: racocelli@weisslawllp.com

                                           *Attorneys for Plaintiff*